SADIE R. DAVIS, petitioner,

*v.*

HOWARD GREEN, defendant.

[Submitted September 19th, 1919.   Determined September 30th, 1919.]

1. The general rule that where the parties are *in pari delicto* no affirmative relief will be given to one as against the other is always regarded by courts of equity as without controlling force in all cases in which public policy is considered as advanced by allowing either party to sue for relief against the transaction.

2. A petitioner seeking annulment of her marriage to the defendant because at the time of such marriage she was the lawful wife of another man then living, which fact and that their marriage was consequently void was known to her and to the defendant, would not be denied relief as being *in pari delicto*, as though the marriage was void without any decree, the decree sought would merely operate to establish for all time the status of the parties, and would be granted in view of public policy, as in its absence the remarriage of the petitioner after the death of her present husband or the remarriage of the defendant might otherwise put in doubt the validity of lawful marriages and the legitimacy of lawful children.

On petition for annulment of marriage.   On hearing on exceptions to report of master.

Petitioner seeks a decree annulling her marriage to defendant on the ground that at the time of her marriage to defendant she was the lawful wife of another man.

No defence has been made.   The testimony taken before the special master fully established the fact of petitioner's ceremonial marriage to defendant, and also the fact of her prior lawful marriage to another, and that her lawful husband was still alive at the time of her marriage to defendant, and also at the time of the hearing, and that he had not been divorced from petitioner.   It was further established that at the time of the marriage of petitioner and defendant both parties well knew that

2

petitioner was the lawful wife of another person and that their marriage was, in consequence, void; that petitioner and defendant cohabited for about one year, during all of which time petitioner knew that her conduct was criminal; that at the end of that time she left defendant because she "felt that it wasn't right to live in that way." No child was born of the unlawful marriage.

The foregoing facts were specifically found by the learned master, but a decree for petitioner was by him denied because of the equitable maxim that relief should not be awarded to one who comes into court with unclean hands.

Exceptions have been filed in behalf of petitioner upon the ground that the facts established by the evidence entitled petitioner to a decree.

*Mr. D. Trueman Stackhouse,* for the petitioner.

LEAMING, V. C.

In *Rooney* v. *Rooney, 54 N. J. Eq. 231,* the learned vice-chancellor denied a decree of annulment of a void marriage because of the established equitable maxim that relief would not be granted to a suitor who should come into a court of equity with unclean hands. In that case the husband, who sought the decree of annulment, had fraudulently concealed from his innocent victim the fact that he had a lawful wife; other circumstances of that case also appealed with extraordinary force to the enforcement of the equitable maxim there made the basis of the decree. The present case differs from the *Rooney Case,* by the circumstance that neither party was guilty of fraudulent concealment from the other, since both parties to the unlawful marriage knew that the wife, petitioner herein, had a husband who was alive at the time, and both parties knew that their marriage was unlawful by reason of that fact; they were *in pari delicto.*

Our Divorce act provides:

"Decrees of nullity of marriage may be rendered in all cases when—1. Either of the parties has another wife or husband living at the time of the second or other marriage."

Assuming, as I do, that the court of chancery of this state in the exercise of its statutory jurisdiction in cases of nullity and divorce should give due recognition and force to the established principles which are applied in ordinary suits in equity, I am yet unable to conclude that the petitioner herein should be denied a decree.

The equitable maxim that he who comes into equity must come with clean hands is subject to well-defined limitations. While the general rule is that where the parties are *in pari delicto* no affirmative relief of any kind will be given to one against the other, that rule has always been regarded by courts of equity as without controlling force in all cases in which public policy is considered as advanced by allowing either party to sue for relief against the transaction. *2 Pom. Eq. Jur.* § *941.* That vital public interests are involved in a case of this nature is obvious. The marriage here under consideration is absolutely void without the aid of any judicial decree to that effect; the decree here sought is merely operative to establish for all time the status of the parties, whereas, without such decree lapse of time will render it more difficult, if not impossible, for their status to be ascertained by reason of the loss of evidence. It is in that office of the decree that vital public interests arise, since the remarriage of petitioner after the decease of her present husband or the remarriage of defendant may, in the absence of a decree at this time, expose to doubt the validity of lawful marriages and the legitimacy of lawful children. In *Freda* v. *Bergman, 77 N. J. Eq. 46,* Vice-Chancellor Stevenson points out with clearness and force the paramount interests of the public which are involved in a case of this nature. Those public interests appeal to me as of such impelling force that the equitable maxim relied upon by the learned master must be deemed inapplicable in the situation here presented. See *Szlauzis* v. *Szlauzis, 255 Ill. 314.*

In the English ecclesiastical courts, in suits for decrees of nullity of marriages which the statute declared absolutely void, it appears to have been uniformly recognized that the efficacy and importance of a judicial declaration of nullity was "to prevent the consequences which might in future take place from death of witnesses, or other occurrences rendering proofs difficult or

uncertain" (*Shelf. M. & D. *565, tit. "Nullity"*), and an examination of the reported cases will disclose that the fundamental reason for awarding decrees of nullity in those courts at the instance of either party was the protection of those public interests, and not because of any inability or hesitancy on the part of those courts to recognize and apply the equitable maxim already referred to in all appropriate cases. Thus, in *Watts* v. *Watts, 3 Phillim. 43,* the court says: "It is a duty this court owes to the public to declare the situation of the parties." In *Ray* v. *Sherwood, 1 Curt. 193, 226, 227,* it is said: "Either party may bring suit to have his marriage declared null and void. * * * It is on the ground that it is material for their own sakes, and that of the public, that their status should be known." In *Pertreis* v. *Tondear, 1 Hagg. Cons. 136, 138,* it is said: "It may be necessary, for the convenience and happiness of families, and the public likewise, that the real character of these domestic connections should be ascertained and known." These cited cases were all suits for decrees declaring marriages void for causes which the statute declared operative to render marriages null and void *ab initio,* such as pre-contract, and the like.

But in cases where the marriages were voidable only the same courts appear to have discerned no such public interests, and to have been accordingly free to deny relief to the wrong-doer, since the status of the parties in such circumstances, in the absence of a decree, was regarded as already fixed by their marriage. Thus, in *Norton* v. *Seton, 3 Phillim. 147,* the libellant sought a decree of annulment of his marriage because of his own impotency, such marriages being deemed voidable only. The court found as a fact that at the time of his marriage he knew he was impotent. In the reported opinion it is recognized that the public has an interest that the real status of the parties should be ascertained and declared where the marriage is absolutely void under the Marriage act, but the view is adopted that no such public interest exists in cases of marriages voidable only; relief was, accordingly, denied to libellant because of his own wrong-doing.

I am constrained to advise a decree in accordance with the prayer of the petition.