CHARLES REGINALD GIBBS, petitioner,

*v.*

CAROLINE JABLOWSKI GIBBS, defendant.

[Decided March 17th, 1921.]

1. In suit for decree of nullity of marriage for the cause of non-age under the statute, not all equitable defences are barred to defendant.

2. Whether or not any given equitable defence may be interposed rests upon public policy.

3. Where a husband sues for decree of nullity under the statute for the cause of non-age, an answer is sufficient which alleges with sufficient fact and circumstance to make a *prima facie* case that the petitioner fraudulently misrepresented himself to defendant as being above the statutory age, with intent to procure the marriage, and that she contracted the marriage relying on the truth of his fraudulent misrepresentations, as otherwise she would not have done.

On motion to strike out.

*Messrs. Hutchinson & Hutchinson,* for the petitioner.

*Mr. William Reich,* for the defendant.

BUCHANAN, V. C.

Petitioner sues, by next friend, to annul his marriage to defendant, alleging that he was below the age of eighteen at the time of the marriage and has not confirmed the marriage since attaining eighteen years.

Defendant by her answer admits the marriage and admits that there has been no cohabitation since December 6th, 1919 (petitioner alleges November 9th, 1920, as the date when he attained eighteen), but denies that petitioner was under eighteen at the time of the marriage, and further sets up that at and prior to the marriage petitioner falsely represented to the official issuing the marriage license that he was twenty-two years of age, and made

the same representation to defendant, thereby inducing her to marry him.

Petitioner now moves to strike out the answer on two grounds —(1) that the answer is untrue in denying that petitioner's age at the time of the marriage was below eighteen, and (2) that the allegation of fraud is insufficient as a defence to the petition.

On the first ground, of course, petitioner must fail. That issue is to be determined on final hearing.

Petitioner is, however, entitled to have the third paragraph of the answer stricken out. It combines in one paragraph an allegation of false misrepresentation of his age to the marriage license officer, and of the like misrepresentation to defendant. The allegation of misrepresentation to the marriage license officer is, of course, absolutely immaterial in this action. Such an act, while it might well subject petitioner to punishment for perjury under the provisions of section 9 of the "Act concerning marriages" (*Rev. 1912*), can be no possible ground for annulling the marriage. Section 12 of the same statute expressly provides that the failure to procure a marriage license altogether shall not invalidate any marriage otherwise lawful. A license, whether obtained fraudulently or properly, is not essential to the validity of a marriage; the failure to comply with the statutory requirements as to such license simply subjects the persons at fault to the statutory penalties or punishment therefor. *Taub* v. *Taub, infra.*

The allegation as to the misrepresentation to defendant is in itself objectionable as being somewhat uncertain and obscure. But it is apparent that defendant intended to set up that the petitioner, at and prior to the marriage, falsely stated to her that he was over eighteen years old, intending thereby to induce her to marry him; that she believed and relied upon that statement, and thereby was induced to, and did, marry him, as otherwise she would not have done.

The question thus presented, therefore, is whether or not such a false and fraudulent representation is an adequate defence to a suit by the fraudulent party to annul the marriage. That question, it would seem, has never been squarely adjudicated in this state.

The statute (section 1, Divorce act, *Rev. 1907*) provides that a decree of nullity of marriage may be rendered at the suit of the husband, when he was under eighteen at the time of the marriage, and has not confirmed the marriage after attaining that age. There is a similar provision as to suits by the wife, except that the age for her is sixteen. A decree of nullity in such a case amounts to a decree of absolute divorce. *Titsworth* v. *Titsworth, 78 N. J. Eq. 47; Taub* v. *Taub, 87 N. J. Eq. 629.*

The marriage is not void, but voidable, and is valid until decree avoiding it.

The first issue raised by the present motion is: (1) In any given case where the evidence duly establishes the facts that petitioner and defendant were lawfully married, that petitioner was then below the statutory age, and that petitioner has not confirmed the marriage since attaining the statutory age, is this court compelled to reject any and all equitable defences to the suit and grant the decree of nullity prayed for?

If this question be answered in the affirmative, it is dispositive of the case *sub judice.* If the answer be negative, there remains a second question: (2) What is the nature of the equitable defences which may be interposed to such a suit, and does the instant case come within that category?

1. I am convinced, both on reason and authority, that the first question must be answered in the negative.

(*a*) It is, I think, not open to question that as a broad, general proposition, in English and American jurisprudence, suits for divorce or nullification are deemed of an equitable nature and as subject, to some extent at least, to equitable rules and principles. *Cf. Bish. Mar., D. & S.* § 722.

(*b*) That this is true in our own state, even as to suits based upon purely statutory grounds, has been repeatedly held in this court. *Rooney* v. *Rooney, 54 N. J. Eq. 231* (at p. *242*); *Kretz* v. *Kretz, 73 N. J. Eq. 246* (at p. *250*); *Freda* v. *Bergman, 77 N. J. Eq. 46* (at pp. *47, 48*); *Davis* v. *Green, 108 Atl. Rep. 772.* I know of no expression to the contrary by the court of errors and appeals (it is contended on behalf of petitioner that such is the effect of *Taub* v. *Taub, supra,* but the contention, in my

opinion, is without weight, as will be discussed later). That it is true, at least as to cases of divorce as distinguished from nullity, is also shown by the admissibility of such defences as condonation and laches, and the admissibility of fraud to rebut condonation, as to none of which are there any provisions in the statute. Then, again, there are the cases where this court takes jurisdiction of suits for, and grants decrees of, nullity upon grounds not provided by statute, but purely equitable, such as fraud of certain kinds in the inception of the marriage contract (*Boehs* v. *Hanger,* 89 *N. J. Eq. 10; Davis* v. *Davis, 90 N. J. Eq. 158; Bolmer* v. *Edsall, 90 N. J. Eq. 299; Ysern* v. *Horter, 91 N. J. Eq. 189*) : and duress (*Avakian* v. *Avakian,* 69 *N. J. Eq. 89*). These latter cases are, of course, not illustrative of administration of equitable principles in suits on statutory grounds, but it seems to me are not without relevance in a consideration of the equitable nature of suits for divorce and nullity. Certainly, if such suits are to be considered as wholly and strictly limited and controlled by the statute, decrees in these latter cases could not be granted.

(*c*) The language of the statute does not forbid the entertainment of equitable defences. The phraseology employed therein is: "Decrees of nullity may be rendered in all cases when," &c. The language is the same in that part of the statute relating to divorces: "Divorces from the bond of matrimony may be decreed for the following causes." The use of the word "*may*" does not indicate a legislative intent to compel the granting of decrees in cases coming within the specified classes—an intent to exclude all equitable defences. Rather does its use indicate precisely the contrary, when consideration is taken of the language of the prior acts.

From 1818 (I have not examined the act of 1794) down until 1902, the statutes make no distinction between nullity and divorce. Decree of divorce is provided for in the cases of prior spouse living, adultery, desertion and impotence. In every statute the word "*may*" is used as to all these cases, except that of the bigamous second marriage—regarding which the language is that divorce "*shall*" be granted. Both the bigamous second

marriage and the marriage dissolved for impotence are declared to be void from the beginning, yet as to the latter the divorce *"may"* be decreed, not *"shall"* be decreed. In the act of 1902, when the distinction between nullity and divorce was first made, the word *"shall"* was omitted, and from thence hitherto the word *"may"* only has been used. It seems to me only reasonable to conclude that in the use during all these years, in the several enactments, of the distinction between *"shall"* and *"may,"* the legislature acted not at random, but rationally, and with the intent that the two words should express different meanings, namely, the respective meanings which those words ordinarily and naturally have. The reason for the mandatory expression as to the bigamous second marriage is obvious, since to a monogamous race there could not be any such thing as a second marriage while a prior marriage still existed: the thing was void without decree, but public policy required the record thereof by decree. It likewise seems to me a reasonable conclusion that the legislature's omission of the word *"shall,"* in the act of 1902 and the act of 1907, after such long prior use thereof, was by design and not accident, and that the legislative intent was that the language should not be deemed mandatory as to any of the specified instances. It is also worthy of note, in this connection, that the case of *Rooney* v. *Rooney, supra,* was decided under the earlier statute and was within the knowledge of the legislature when it passed the act of 1902. In that case it was held that even in a suit for dissolution of a bigamous second marriage, notwithstanding such marriage was indubitably void *ab initio,* and notwithstanding the use of the word "shall" in the statute, nevertheless, the suit being brought by the bigamist, and it appearing that he had fraudulently procured the second marriage by false representation of divorce from the first wife, he must in equity be denied relief.

(*d*) *Public Policy.*—It is contended that it is against public policy to admit equitable defences in an action of this kind. To that I cannot assent. That in a suit to annul a bigamous second marriage, the equitable doctrine of unclean hands or in *pari delicto* must be subordinated to public policy is undoubtedly true.

*Freda* v. *Bergman, supra; Davis* v. *Green, supra.* It may also be conceded for the sake of the argument that in such a case any and all equitable doctrines and defences are overcome by public policy. It may likewise be argued that the same is true in a suit to dissolve a marriage within the prohibited degrees (which the Marriage act makes void). But the case now under consideration is not either of those cases, and the reasons upon which the public policy rests in such cases are not existent in a nullity suit for the cause of non-age.

As is pointed out in *Freda* v. *Bergman, 77 N. J. Eq. 46* (at *p. 49*), in a suit for nullity on the ground of prior marriage, petitioner does not ask relief or aid from this court, at least in any other than a technical sense. In the present case, however, the contrary is true. Having obtained from the wife all that he wants he now asks this court to relieve him henceforth from the obligations of a husband.

Where is there any expression of the public policy contended for? The legislature, as I have before pointed out, does not make this marriage void but only voidable—and that only at the instance of the party below the statutory age, and not even then if there has been a confirmation after attaining due age. (*Fodor* v. *Kunie, 112 Atl. Rep. 598,* published since this opinion was written.) The purpose is to discourage marriages in which one or both parties are of immature age (*Cf. Bid. Div. Prac. (2d ed.) 356*); but it is only to discourage—not prohibit, inasmuch as the statute does not make them void, nor is there any statute prohibiting them (although the provisions of the Marriage act are framed to prevent such marriage without the consent of the parents of the immature party). Indeed, in certain instances, such as seduction cases, the state by its statutes encourages the marriage.

The purpose also doubtless is to protect, in some measure, the infant against the consequences of an immature and ill-considered marriage. But the interest of the individual infant is entirely subordinate to the general public interest. Petitioner's counsel contends that the intention of the legislature to protect the state and the immature youth from the consequences likely

to flow from such ill-advised marriages is nullified unless it be held also that the legislative intent was to permit the youth to avoid the marriage, notwithstanding he procured the marriage by this fraud. This, in my opinion, however, would be forcing a construction beyond reasonable limitations. *Cf. LaRosa* v. *Nichols, 92 N. J. Law 375.* So far as the state is concerned, it has provided for the discouragement of such marriages by providing in effect that (as Vice-Chancellor Stevenson phrased it in *Williams* v. *Brokaw, 74 N. J. Eq. 561,* at *p. 563*) : "If hereafter any person shall be so ill-advised as to enter into a marriage with an infant under the prescribed age, he or she will do it with the knowledge that the relationship can be terminated at the mere will of the infant." But how can that person have that knowledge when the infant has fraudulently induced the belief that he (or she) is over the prescribed age? The infant may have produced a forged birth certificate or forged entry in a family Bible.

So far as the protection of the individual infant is concerned, I can discern no design by the legislature to carry it to any such extent as petitioner contends. The design may be to protect an innocent youth in such case, but it by no means follows that a guilty one is also to be protected. It seems to me that some protection is equally due to the other party to the marriage, especially since that party might be a girl who was only sixteen years of age. Can it be said that public interest requires that a youth just short of eighteen years, who has by such fraud induced such a girl to marry him, and give him herself, her affection, her service, and to conceive a child for him, requires that such a youth be permitted to cast her off by decree of this court, in order to protect him against his lack of maturity, experience, judgment and discretion? If, instead of filching from her her body, her affection and her self-respect, he had by false pretense robbed her of only a few dollars in money or goods, the legislature does not deem that his lack of judgment or discretion requires protection from imprisonment. If he falsely state his age to the license issuing officer, he gets no protection, but is subject to the penalties for perjury. If he seduce the girl under promise

of marriage he is punished criminally unless he fulfills the promise before or after conviction.

*Taub* v. *Taub, supra,* is not authority in favor of petitioner on this point. What the court of errors and appeals said in that case is simply that "the state by the statute has declared in effect that it does not care to enforce any public policy keeping marriages indissolvable *contracted under the circumstances of the present case."* The italics are mine, and show the express delimitation of the pronouncement, which was made in denying the contention that decree of nullity for the cause of non-age should not be granted to a husband who at the time of the marriage had, but concealed, the intention of disaffirming it on reaching the age of eighteen.

Neither is *Titsworth* v. *Titsworth, supra,* authority in petitioner's favor. There the petition was practically identical with that in the present case, but there was no answer setting up fraud or any other equitable defence; the case was uncontested. Nor, in my opinion, are the remarks of Vice-Chancellor Stevenson in that case at all indicative of an opinion on his part that fraudulent misrepresentation of petitioner's age to defendant would not warrant denial of decree, although I admit that an argument, by inference, to that effect may be made with some degree of plausibility.

2. Since, then, defendant is not precluded from interposing any and all equitable defences to a suit of the present character, is the particular equitable defence here set up a tenable one? This question, I think, must also be answered in the affirmative.

It would be straying too far afield from the issue here to be determined to attempt to survey all the equitable defences which might ever be sought to be interposed to a suit for nullity for non-age. Conceding, on the one hand, that not all such are admissible, it would seem clear on the other hand that if any are admissible, the one here relied on by defendant must needs be. Fraudulent representation as to age may well be considered as not being of a fact sufficiently material to warrant the dissolution of a marriage thereby secured between two adults. *Cf. Carris* v. *Carris, 24 N. J. Eq. 516* (at *pp. 522, 523*). But in the case *sub judice* the circumstances are very different.

A wife in contracting a marriage with a young man below the age of eighteen, as has been said, contracts a marriage which under the provisions of our statute is a mere trial marriage, and which may at the option of the husband, and, indeed, either at his mere temporary whim, or pursuant to an original and continued purpose and intent, be wholly set aside when he reaches eighteen. The consequences of such a setting aside of the marriage are, or may be, in many instances, a matter of very serious moment to the wife. A certain "loss of caste" is, under the conditions of our social fabric, almost inevitably visited upon a divorced wife, even though she be entirely free from guilt or wrong of any kind. Her tarnishment may be greater or less, according to the character, intelligence and broadmindedness of the community in which she lives, or of her circle of relatives, friends and acquaintances. Common report or gossip (so aptly described by Virgil in the fourth book of the Æneid) concerns itself much with the fact that a woman has been divorced, but concerns itself little, if at all, to spread the fact of her innocence in regard to such divorce. Again, even if there be no child of the marriage, her subsequent opportunity for marriage is very greatly decreased. Many men from religious belief or personal grounds will decline to entertain the idea of marriage with one who has been the wife of another. If there be a child, this opportunity is still further cut down, for many a man who might otherwise espouse her, will not care to burden himself with the care and support of a child or children not his own, and, furthermore, at least, unless and until she marry again, she has the care of the bringing up of the child without the aid and assistance, other than perhaps mere financial support, from her husband which should rightfully be hers. This phase of the subject need not be pursued further, although it may be added that to such a child itself the results are perhaps equally as unfortunate and undesirable.

It is one thing, therefore, for a wife to contract such a marriage, knowing (or not caring) that the husband can and may shortly cast her off; it is a very different thing for her to

be trapped by the intentional fraud and deceit of the youth into a marriage she would have spurned had she not been so deceived. The fraud and deceit is clearly vital, therefore, in that it goes to the inception and procurement of the contract, and in that it is as to a fact which is material—the age of the husband, which is, indeed, the *only* fact material from the standpoint of a suit based on non-age.

I think there is a very plain distinction between the fraudulent misrepresentation of the age, and the situation alleged in the *Taub Case,* of a fraudulently concealed intent at the time of the marriage to disaffirm it on reaching the statutory age. In the former case, the misrepresentation is as to an absolute and immutable fact; if the man is over eighteen years of age, neither by any volition of his own, nor in anywise whatsoever, can he ever subsequently become under eighteen years of age. If he be over eighteen, therefore, the wife can assuredly rely that that fact cannot be changed, and that he can never dissolve the marriage for non-age. If she believe him to be over eighteen then her entry into a marriage with him (which but for such belief she would avoid), confident that he could not dissolve it at his option, is a perfectly logical and justifiable sequence. But, in the latter case, the representation or concealment is as to a fact which is not unchangeable—it is as to the fact of the then existence of an intent. It might well be deemed, therefore, not a material fact, since even if true she cannot rely upon its continued existence, she cannot, unless devoid of mentality, rely upon it as protecting her from the subsequent dissolution of the marriage at the husband's instance.

I do not wish to be understood, however, as saying that in every case of intentional misrepresentation and deceit of the wife by the husband as to his age the husband will necessarily be denied decree of nullity. As it is well stated by Chief-Justice Bigelow in *Reynolds* v. *Reynolds, 3 Allen 605, 606:* "It would be difficult, if not impossible, to lay down any general rule or definition which would comprehend all cases coming within the range of the legal import of the word 'fraud,' * * * as no

two cases are precisely alike in their circumstances, it follows that the question whether fraud exists sufficient to vitiate a contract always depends very much on the nature of the transaction, the means of information possessed by the parties, and their relative situation and condition toward each other."

This is of course equally as true where the question is as to whether fraud exists sufficient to work an estoppel or to bar relief. *Cf.*, also, generally, *Bish., supra, sub-tit. "Fraud, Error, Duress."* Obviously, the case is much stronger where the deceived wife is only sixteen years old than where she is a mature woman; the age and intelligence of the respective parties, whether it is man or woman who claims to have been deceived, the means or method used in the accomplishment of the deception, and many other facts may help to vary the result.

Suppose, for example, in the trial of the instant case, the proofs should fully establish all the allegations of defendant, but that it should further appear that defendant was a woman of twenty-three or twenty-four (her age does not appear in the pleadings), and that she in fact knew nothing whatever as to the existence of the statutory provision in question; that she, indeed, would not have married him had she known he was only seventeen instead of twenty-one, not, however, because of this statutory provision of which she did not know, but because she would not wish to be deemed (to use the vernacular) a "cradle-robber." The misrepresentation of the essential fact, the reliance upon it, the marriage which but for the deceit would not have been contracted, are all present, but I incline very strongly to the belief that the husband's decree would not be withheld.

Hence, although, as I have said, I think in principle the defence here interposed is adequate and an answer is sustainable as a pleading, which sets up allegations with sufficient facts and circumstances to show *prima facie* an intentional deceit of defendant by petitioner as to the latter's age, in order to procure the marriage, and the accomplishment of that deceit and the resultant marriage in reliance upon the truth of the misrepresentation, which otherwise would not have been entered into—

nevertheless, even if all such allegations are proved upon the hearing, the decree may, under all the circumstances of the case as then brought out, be granted.

Those portions of the answer hereinbefore indicated will be stricken out. Leave will be given to amend within ten days from service of the order, copy of such amendment to be served. No costs.

Since writing the foregoing my attention has been called to the opinion in the recent case of *Fodor* v. *Kunie,* 92 *N. J. Eq.* 301; 112 *Atl. Rep.* 598, in which the language of the chancellor would seem to indicate that a husband over eighteen, who had been induced to marry a girl below sixteen, as the result of false and fraudulent representations by the girl that she was above sixteen, cannot maintain a suit for nullity. That question was not in fact before the court—the actual decision on the case submitted being that a petitioner whose original petition was based on an alleged common law right could not be permitted to amend the petition to set up an alleged statutory right, because the effect of such an amendment would be to set up an entirely new and distinct cause of action, and further because such amendment would be useless, inasmuch as there was in fact no statute creating such alleged statutory right.

However, assuming the law to be that a deceived husband (or wife) in such a case can under no circumstances have the marriage annulled for such fraud, it is obvious that that is a very different proposition from denying to a suitor guilty of material fraud the right to avoid the result of that fraud—from holding, as I have held in the case *sub judice,* that the suitor guilty of fraudulent and material misrepresentation is estopped to deny the truth of that which he, in order to induce the marriage, asserted to be the truth.