TOWNSEND *v.* MORGAN ET AL.

[No. 66, October Term, 1948.]

170

*Decided January 21, 1949.*

172

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ., and EMORY H. NILES, J., of the Supreme Bench of Baltimore City, specially assigned.

*Sidney I. Fradkin,* with whom was *Bernard M. Savage* on the brief, for the appellant.

No appearance for appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Arthur James Townsend brought this suit in the Circuit Court of Baltimore City to annul his marriage with Elsie Morgan, also known as Elsie Mae Townsend, and to sell their jointly owned real property and divide the proceeds of sale according to their respective rights.

He alleges in the bill of complaint that he married Cleo Elberta Reed in Chicago, Illinois, on May 2, 1930, and they moved thereafter to Somerset County, Maryland; but in December, 1930, they voluntarily separated, his wife departing from the State of Maryland. On March 1, 1940, not hearing anything of his wife for more than nine years, and believing he was free to marry again, he married Elsie Morgan, defendant, in Baltimore. In April, 1942, he and defendant purchased the leasehold property at 5205 Elmer Avenue and acquired the title as tenants by the entireties. Later in 1942, after being cautioned that his marriage to defendant might be invalid, as there was a possibility that his first wife was

still living and undivorced, he obtained a divorce from his first wife. In November, 1946, he and defendant acquired the grount rent of their property, and thereupon they gave a mortgage on the entire property to State Mutual Building Association, codefendant. But disputes, which arose subsequently, resulted in their separation. In January, 1948, he learned that his first wife was alive and had never obtained a divorce from him. Defendant is still occupying the property.

Defendant filed a demurrer to the bill, asserting (1) that complainant was barred from relief in equity by the doctrine of unclean hands, and (2) that the bill is multifarious. The chancellor sustained the demurrer and dismissed the bill. Complainant appealed here from that decree.

The Maryland bigamy statute contains a proviso that it shall not apply to "any person whose husband or wife shall be continuously remaining beyond the seas seven years together, or shall be absent himself or herself seven years together, in any part within the United States or elsewhere, the one of them not knowing the other to be living at that time". Code 1939, art. 27, sec. 19. Although the proviso exempts from the operation of the statute a husband who marries another woman after his first wife has been absent and not heard of for the period of seven years, the second marriage in such a case is nevertheless void if the first wife is still alive and undivorced. *Fenton v. Reed,* 4 Johns., N. Y., 52, 4 Am. Dec. 244; *Cartwright v. McGown,* 121 Ill. 388, 12 N. E. 737, 2 Am. St. Rep. 105. Common-law marriages are not valid in Maryland, and therefore when a party who has a spouse living marries another, cohabitation under the second marriage after the death or divorce of the first spouse does not give validity to the second marriage. *Mitchell v. Frederick,* 166 Md. 42, 46, 170 A. 733, 92 A. L. R. 1412. A second marriage contracted while a first marriage exists undissolved is a nullity without the passage of any judicial decree declaring it void. However, a decree of annulment is generally considered de-

sirable. Such an adjudication has the effect of permanently establishing the status of the parties. The English ecclesiastical courts as well as American courts have recognized that a judicial declaration of the nullity of a marriage is advantageous in preventing unfortunate consequences that might occur in the future on account of the death of witnesses or any other reasons that might make evidence difficult or impossible to obtain. *Davis v. Green*, 91 N. J. Eq. 17, 108 A. 772.

The inherent power of courts of equity to declare a marriage void when procured by fraud or duress has long been recognized in Maryland. *Le Brun v. Le Brun*, 55 Md. 496, 503; *Wimbrough v. Wimbrough*, 125 Md. 619, 94 A. 168, Ann. Cas. 1916E, 920. In 1886 the Legislature of Maryland amended the State Marriage Act by conferring express authority upon the Circuit Court for the several counties and the Superior Court of Baltimore City, upon petition of either of the parties, and upon the Circuit Court for the counties and the Criminal Court of Baltimore, on indictment, to determine the validity of any marriage and to declare any second marriage, the first subsisting, null and void. Laws of 1886, ch. 497, Code 1939, art. 62, sec. 16. In 1945 the Legislature transferred this authority from the Superior Court to the Circuit Courts of Baltimore City. Laws of 1945, ch. 664. In 1947 the Legislature provided that the jurisdiction which had theretofore been exercised under the provisions of the Marriage Act (Code 1939, art. 62, sec. 16) to declare a bigamous marriage null and void, shall hereafter be exercised under the provisions of the Chancery Act (Code Supp. 1947, art. 16, sec. 38) governing annulment of marriage for any cause. In addition, the 1947 Act provides that whenever the Criminal Court of Baltimore, or a Circuit Court of one of the counties shall convict one or both of the spouses of bigamy, the judgment of conviction shall serve as an annulment of the marriage, provided that there shall be recorded on the records of the Circuit Court or Circuit Court No. 2 of Baltimore City, in case of a conviction in the Criminal Court of

Baltimore, or, in case of a conviction in the Circuit Court of one of the counties, on the equity docket of the same Court, a complete transcript of the docket entries in the criminal proceedings leading to the judgment of conviction. Laws of 1947, ch. 849, Code Supp. 1947, art. 62, sec. 16.

It is generally accepted that the equitable maxim that he who comes into equity must come with clean hands cannot be applied in any case where the result of the application sustains a relation which is denounced by statute or is contrary to public policy. *Heflinger v. Heflinger*, 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088; *Simmons v. Simmons*, 57 App. D. C. 216, 19 F. 2d 690, 54 A. L. R. 75. In proceedings to annul a bigamous marriage, the interest of the State is paramount to the grievances of the parties directly interested. The State sponsors the sanctity of the marriage relation and the welfare of society. In some cases the interests of unborn children may be affected. There is a difference between the ordinary case where the court refuses to aid the complainant in securing benefits from his own wrongdoing and the case where the complainant desires to have a judicial declaration that a marriage is null and void. When a party files a suit for annulment of his marriage, he is deemed as coming into court repenting of his wrongdoing and asking the court to correct his wrongful act as far as possible, in order to prevent any injurious consequences which might be cast thereby in the future upon innocent persons and upon the State. For these reasons the unclean hands doctrine is not applicable in a suit to annul a bigamous marriage. The marriage status being on a different footing from contracts generally, a party may be relieved from a void marriage, although fully aware of its invalidity when contracted. *Phelps, Juridical Equity*, sec. 259; *1 Bishop, Marriage, Divorce and Separation*, sec. 722; *Davis v. Green*, 91 N. J. Eq. 17, 108 A. 772; *Arado v. Arado*, 281 Ill. 123, 117 N. E. 816, 4 A. L. R. 28; *Kiessenbeck v. Kiessenbeck*, 145 Or. 82, 26 P. 2d 58, 60.

It is an unquestioned principle that a court of equity will refuse aid to a complainant who has acted fraudulently or gained an advantage by deceit or unfair means. But the general iniquitous conduct, unconnected with the transaction alleged as the cause of action, does not deprive him of his right to relief in a court of equity. Equity does not demand that suitors shall have led blameless lives. The maxim requiring clean hands does not disqualify one who has not dealt unjustly in the particular matter in which judicial protection or redress is sought. The courts apply the maxim only where some unjust act of the complainant affects the equitable relations of the parties with respect to the matter presented for adjudication. Thus the maxim is applied, not by way of punishment for past violations of the law, but upon considerations that make for justice. *Trice v. Comstock*, 8 Cir., 121 F. 620, 61 L. R. A. 176, 182; *Keystone Driller Co. v. General Excavator Co.*, 290 U. S. 240, 54 S. Ct. 146, 148, 78 L. Ed. 293.

In *Maskell v. Hill*, 189 Md. 327, 55 A. 2d 842, where a married man and his mistress obtained a deed of real estate, in order to have a house in which to continue illicit relation, and subsequently a forged deed was executed purporting to have been executed by them conveying the realty to the married man, this Court held that the forged deed was a nullity and the mistress could maintain a bill to remove the deed as a cloud upon her title or a bill for sale in lieu of partition, notwithstanding the illicit relation. Likewise, in *Loughran v. Loughran*, 292 U. S. 216, 54 S. Ct. 684, 689, 78 L. Ed. 1219, the clean hands doctrine was held inapplicable in a widow's suit in the District of Columbia to enforce her rights in the property of her deceased husband, from whom she had been granted a divorce *a mensa et thoro* in Virginia, after their marriage in Florida in disregard of the District statute prohibiting remarriage of persons divorced for adultery. The case before us is not one in which complainant perpetrated any fraud upon defendant, or even was *particeps criminis* with her. The fact that com-

plainant and defendant married unlawfully in 1940 did not raise such an equity in defendant's favor in respect to property rights acquired in 1942 and 1946 as to constitute a bar to the suit.

In this case the bill alleges that complainant's first wife left the State in 1931, and that it was not until 1940, after she had been unheard of for considerably more than the statutory period of seven years, that complainant married again. He declares that he was mistaken in his belief that he could lawfully marry defendant. He argues that he did not seek immoral relations with defendant, and that if he had known that his first wife was still alive and undivorced, he would not have married defendant when he did. He also calls attention to the fact that he bought the home in Baltimore two years after he married defendant and had the title placed in their names as tenants by the entireties, indicating strongly that he married in good faith and with the belief that he was lawfully married. When doubt was cast afterwards upon the validity of his second marriage, he obtained a divorce from the first wife. In 1946, thinking that the divorce which he had obtained cured any defect that might have existed in his second mariage, he had the title to the ground rent also placed in the names of himself and defendant as tenants by the entireties. The Maryland partition statute provides that if any land or any right, interest or estate therein cannot be divided without loss or injury to the parties interested, the court of equity may decree a sale thereof and a division of the money arising from such sale among the parties according to their respective rights. Code 1939, art. 16, sec. 159; *Cook v. Boehl*, 188 Md. 581, 589, 53 A. 2d 555, 559. It is our opinion that the clean hands maxim cannot be applied in this case to bar complainant from obtaining a decree for the sale of the jointly held property.

Defendant's objection that the bill is multifarious is also without merit. The question of what constitutes multifariousness is one which lies somewhat in the dis-

**178**

cretion of the court under the circumstances of each particular case. In the exercise of that discretion the court endeavors to guard against multiplicity of suits on the one hand, and the imposition of needless costs and delays on the other. One of the rules adopted by the Court of Appeals applicable to both law and equity provides: "The plaintiff may join in one action either as independent or as alternate claims as many claims as he may have against the defendant." General Rules of Practice and Procedure, part 2, subd. 3, rule 2, Code Supp. 1947, page 2040; *Bachman v. Lembach,* 192 Md. 35, 63 A. 2d 641. As a general rule, therefore, to be demurrable on the ground of multifariousness, a bill must contain the demand of several matters of a distinct and independent nature against several defendants, thus imposing upon each defendant the costs incident to the trial of several claims against the other defendants with which he has no connection and in which he has no interest. The objections must be confined to cases where the demand against each particular defendant is entirely separate and distinct in its subject matter from that in which other defendants are interested. *Fiery v. Emmert,* 36 Md. 464, 473. In the present case State Mutual Building Association was joined as a codefendant because a balance of approximately $1,250 was still due on the mortgage held by the building association upon the jointly owned property at the time of the filing of the bill. We think that it is proper and advantageous to have the rights of complainant and both defendants adjudicated in one case.

For these reasons we will reverse the decree of the chancellor sustaining the demurrer and dismissing the bill, and remand the case for further proceedings.

*Decree reversed and case remanded, with costs.*