Hamilton Ward, J.
This is an action for annulment of the marriage entered into between the plaintiff and the defendant on the 22d day of October, 1949 at the village of Kenmore in the State of New York on the ground that defendant had another husband living at the time plaintiff married the defendant (Domestic Relations Law, § 6; Civ. Prac. Act, § 1134). This marriage is the second for the plaintiff and the third for the defendant.
By his complaint plaintiff alleges that at the time of the marriage between the plaintiff and the defendant, the defendant had a husband living and that no decree of divorce had been made or entered annulling or dissolving the former marriage and that such marriage was in existence at the time of the marriage between the parties. No issue has been born of this marriage.
Upon the trial it appeared, and I so find, that the defendant’s marital history is as follows: On the 2d day of October, 1934 the defendant married one Eugene Crooks in the village of Suffern, N. Y. One child, Ronald Crooks, was born of this marriage. On the 26th day of March, 1937 defendant applied for and received a “ mail order ” decree of divorce from Crooks granted by the Civil Court, Bravos District, City of Juarez, State of Chihuahua, United States of Mexico. As usual in such actions, neither the plaintiff nor the defendant therein submitted in any manner to the jurisdiction of that court. No validity attaches to such decree, and that decree did not terminate the marriage between the parties thereto (Caldwell v. Caldwell, 298 N. Y. 146). No other decree, annulling or dissolving the marriage between the defendant herein and Eugene Crooks has been obtained by or against the defendant here. The ‘ ‘ mail order ” decree of divorce not terminating the marriage, the present marriage is void if Eugene Crooks was alive at the time the marriage here was contracted (Domestic Relations Law, § 6; Johnson v. Johnson, 295 N. Y. 477). Thereafter and on the 26th day of December, 1942 the defendant here and one John Chilcott went through a marriage ceremony in the city of Northeast, Pa. The application for the marriage license authorizing that marriage is not before me. This attempted marriage was also shortlived, terminating in a decree of annulment granted by the Supreme Court of this county on the 29th day of March, 1945 and in favor of the defendant herein upon the ground that the defendant therein defaulted in a premarital promise to adopt the religious denomination of the plaintiff therein. An examination of the file in that action filed in Erie County Clerk’s office and as a part of the records of this court discloses that defendant *545 did not reveal her marriage to Crooks nor of course the " mail order ” divorce, and for that reason her marital status with Crooks was not litigated in that action. For this reason the finding of a marriage between the defendant here and John Chilcott is not res judicata in this matter.
Plaintiff’s first marriage terminated in an annulment granted by a member of this court in Erie County to his first wife, Jeane Dietz Whittleton, upon the ground of nonage, and entered in the Erie County Clerk’s office on the 15th day of March, 1945. No question arises concerning the validity of this decree. Such decree has become final by its terms.
When the parties here appeared before the city clerk of the City of Buffalo on the 10th day of October, 1949 for the purpose of securing a marriage license, the defendant here swore to the statement that the proposed marriage was to be her second marriage, and accounted for her earlier marriage to John Chilcott with a statement that such marriage terminated in a decree of annulment on June 30,1945. From an examination- of a photostatic copy of such application received in evidence and marked Plaintiff’s Exhibit 4, and from the testimony of the defendant it appears that the defendant did not disclose that the proposed marriage was to be her third marriage, nor did she account for the marriage Avith Eugene Crooks nor the attempted dissolution of that marriage. She stated that her former husband Avas living. It appears that she Avas referring to John Chilcott. Defendant failed to answer the question which reads as follows: “ Is the applicant a divorced person. . . . If so, when and where and against whom divorce or divorces Avere granted.” In the space provided for answers, defendant referred only to the annulment of the marriage Avith John Chilcott. In no way did she disclose the previous marriage to Eugene Crooks and, of course, she failed to disclose that she had obtained a purported decree of divorce from Crooks in the above Mexican court.
In addition, it appears that defendant swore that “ no legal impediment exists as to her right to enter into the marriage state ’ ’, although upon the trial it affirmatively appeared from her oAvn testimony that at the time she applied for the license to marry the plaintiff here, she was fully aware that the ‘ ‘ mail order ” decree was invalid and not entitled to full faith and credit in the State of New York.
Upon the trial defendant attempted to explain her failure to account for her first marriage with Crooks by her testimony that inasmuch as both she and the plaintiff here knew that the Mexican decree was invalid, no useful purpose would be served *546 in disclosing such marriage and purported decree upon the application. Knowledge of the invalidity of the Mexican decree by the plaintiff here does not deprive him of judgment in his favor if otherwise so entitled (Brownell v. Brownell, 74 N. Y. S. 2d 136).
No direct proof was received upon the trial touching upon the continuance of the life of Eugene Crooks. For this reason the determination of this matter is governed by presumptions. In this case, the presumptions are conflicting. On the one hand, there is the presumption of the continuance of life and on the other, the presumption of the validity of marriage. Where a marriage ceremony is shown to have been performed, it is presumed to have been legally and properly performed. (Fisher v. Fisher, 250 N. Y. 313.) Neither of these presumptions, however, is conclusive, but both are rebuttable, either by direct or circumstantial evidence. Which of these presumptions will prevail under the circumstances of this case? Ordinarily, the latter will prevail, for decency and morality call for the preservation, whenever possible, of the marital status created by a ceremonial marriage. The burden of proof rests upon the plaintiff. He must sustain this burden, either by direct evidence or by inferences which naturally and properly flow from the evidence received. The presumption of continuance of life continues unimpaired although insulated by the stronger presumption of the validity of the marriage. The first presumption is for the benefit of the plaintiff, and the second presumption is for the benefit of the defendant and for the benefit of society interested in preserving the regularity and validity of acts surrounding the marital status of its residents. Society’s concern is derivative, resting upon the presumption for the benefit of the defendant, and when such presumption disappears, as to the defendant, it disappears also as to society.
The issue here is whether or not Eugene Crooks was alive at the time plaintiff and the defendant intermarried. If Crooks had been produced on the trial, the issue would have been resolved and of course, the presumption of validity rebutted. If defendant had admitted on the trial that she had actual knowledge that Eugene Crooks was alive at the time she married the plaintiff here, such admission if believed by the trier of the facts would have resolved the issue and destroyed the presumption of validity. If a witness had testified upon the trial to the existence of Crooks at any time subsequent to the marriage, again the issue would have been resolved if such testimony was credible and again the presumption of validity rebutted. Such testimony was not offered nor received upon the trial. *547 Can I, as the trier of the facts, consider other evidence produced on the trial and draw inferences therefrom in order to determine the issue herein? Upon the trial, the defendant testified she did not know the whereabouts of Crooks or whether he is or was alive at the time she married plaintiff. On a pretrial examination, defendant admitted writing a letter to her father in the year 1954 reporting that she had learned of Crooks’ whereabouts. Also when asked whether Crooks was alive when defendant married plaintiff, she replied that she did not know. On direct examination upon the trial, the defendant denied making such statement in the letter to her father. Her credibility in this respect is for the trier of the facts. Defendant is a self-admitted perjuror. The trier of the facts, therefore, is justified in adopting the version of her testimony in this respect least favorable to defendant and finding that she did in fact write a letter to her father in the year 1954 in which she stated in substance that Crooks was alive. I turn now to defendant’s conduct surrounding the issuance of the license to marry plaintiff. I have pointed out above that defendant swore falsely under oath as to the number of the proposed marriage; by silence concerning her attempted divorce from Crooks she withheld vital and necessary information. She knew the Mexican divorce was invalid, but swore there was no legal impediment to entering into the marriage with the plaintiff. Naturally the question arises as to her reasons for perjuring herself. As the trier of the facts, I find there is only one fair inference to be drawn from such conduct and that inference is that she knew Crooks was alive at the time she married the plaintiff. If she knew Crooks was dead or believed Crooks was dead, it would have been a simple matter to correctly answer the questions on the application. If she did not know whether Crooks was dead, she could have commenced a judicial proceeding for the determination of that question by the court (Domestic Relations Law, § 7-a). Her admission that she discussed the invalidity of the Mexican decree of divorce with the plaintiff is further evidence of her knowledge that Crooks was alive at the time she married the plaintiff, for only if Crooks was alive did the materiality of the “ mail order ” decree of divorce arise, and finally, there is the admission by defendant on the pretrial examination that she had written a letter to her father in 1954 reciting that she knew of the whereabouts of Crooks (although denied upon the trial). As above, I have found that she did make such a statement. Such a statement is an admission and as such is evidence that Crooks was alive at the time plaintiff and the defendant married. Upon all the above, I find that the defendant had *548 knowledge that Crooks was alive on October 22, 1949. Because of such knowledge, it necessarily follows that a finding to that effect is appropriate, in the same manner as though she had testified upon the trial that she knew of the existence of Crooks at the time she married the plaintiff here.
I find that Eugene Crooks was alive on the 22d day of October, 1949. I conclude, therefore, that the presumption of validity of the marriage between the parties has been met, rebutted, and that the defendant has failed to go forward to establish the nonexistence of Crooks on October 22, 1949. The presumption of continuance of life remains fortified by the above finding of knowledge on the part of the defendant of the existence of Crooks on October 22, 1949 and until the year 1954. I find that plaintiff has sustained the burden of proving by a fail-preponderance of the believable evidence that defendant had a husband living at the time plaintiff and defendant went through a marriag’e ceremony and that no decree of divorce had been made or entered annulling or dissolving the first marriage of the defendant. The marriage between the plaintiff and the defendant is void.
Defendant asks that alimony be awarded to her in the event that annulment is granted (Civ. Prac. Act, § 1140-a). It seems to me this is a proper case wherein the court may providently exercise its discretion in favor of such application. While the defendant was guilty of misconduct in bringing about this third marriage, the plaintiff is not without fault. He knew that defendant had not validly dissolved her marriage with Crooks. He was at least put upon inquiry to determine for himself if Crooks was still alive at the time he married the defendant. The plaintiff has lived with and cohabited with the defendant for a number of years as husband and wife. He should not be permitted to entirely escape the consequences of his improvident conduct. From the evidence concerning the financial situation of the respective parties, I find, and the judgment will provide, alimony to the defendant in the amount of $10 a week.
Prepare and submit final judgment and decree in accordance herewith.