ROBERT PHILIP ROTH v. PATRICIA ANN ROTH

[No. 997, September Term, 1980.]

*Decided September 1, 1981.*

The cause was argued before GILBERT, C. J., and MELVIN and COUCH, JJ.

*William R. Evans* for appellant.

*Ronald J. Miller* for appellee.

MELVIN, J., delivered the opinion of the Court. GILBERT, C. J., dissents and files a dissenting opinion at page 445 *infra.*

Although the parties put it somewhat differently, we think the issue to be decided in this appeal is this: Did the chancellor have the authority to award alimony to a putative wife after granting her putative husband a divorce *a vinculo matrimonii* on the ground that at the time of their purported marriage the putative wife was already married to a then living husband?

The putative husband, Robert Philip Roth, the appellant here, does not argue the appellee's need for support or the amount of alimony awarded. He contests only the authority of the chancellor to award any alimony at all to his putative wife, the appellee, Patricia Ann Roth, in the circumstances of the case.

On January 4, 1960, Robert and Patricia, then 29 years old and 27 years old respectively, were married by a civil ceremony in Arlington, Virginia. They both testified that the reason for marrying at that time was that Patricia was pregnant. Unfortunately, she was also still married to William Lee Hoffman. The chancellor credited her testimony that Robert was aware of this fact at the time of the Virginia marriage. She testified that she and Robert had discussed the matter at the time and "as soon as my divorce [from Hoffman] was to come through, we were to be remarried . . . [W]e just both agreed with it, that we would get remarried again so that Melissa [the child with whom she was pregnant] . . . would be legitimate." Her divorce from Hoffman "came through" one month later, February 3, 1960, but thereafter nothing further was said or done about "remarrying." They continued, however, to live together in Baltimore for eighteen years as if they were legally married. Two children were born to them. In the words of the chancellor, "they lived together and worked together, just as if they were legally married. They had their arguments back and forth. The only thing that was lacking was a legal marriage."

On August 8, 1978, Robert left the "marital" home never to return. He testified that he left because he "was run off, run out of my house by threats of being shot, and I knew at that time I needed a lawyer. . . ." He said that it was only after he consulted his lawyer that he learned of the date of Patricia's divorce from Hoffman. As we have already stated, however, the chancellor accepted Patricia's testimony to the contrary, *i.e.*, that Robert had known all along of the illegality of the Virginia marriage ceremony.

In any event, on August 16, 1978, Robert filed a Bill of Complaint in the Circuit Court for Baltimore County praying for a divorce *a vinculo matrimonii* from Patricia on the ground that the Virginia marriage of the parties was void ab initio,[1] the reason being that at the time of the "marriage" Patricia was still married to Hoffman. In response, on September 7, 1978, Patricia filed an Answer and a Cross-Bill of Complaint. The Answer admitted the essential allegations of Robert's Bill of Complaint, but averred that Robert had full knowledge of Patricia's marital status at the time of the Virginia marriage ceremony and that he had promised "to enter into another marriage ceremony at a future time in the event the divorce proceedings pending between the Defendant and her former husband were not final at the time the parties hereto married"; that she entered into the Virginia marriage as a result of Robert's representations "and relied thereupon and the parties have lived together as husband and wife since the date" thereof; and that under the circumstances it would be "inequitable and unjust to allow the Plaintiff to obtain a divorce on the grounds that this Defendant was married at the time of the parties' marriage ceremony. . . ."

Patricia's cross-bill sought a divorce *a vinculo matrimonii* from Robert on the ground of adultery. The cross-bill also alleged that Robert abandoned and deserted her without just

---

1. Art. 16, § 24 (Md. Code Annotated, 1957, 1981 Cum. Supp.) provides that, "Upon a hearing of any bill for divorce, the court may decree a divorce a vinculo matrimonii for the following causes, to wit: . . . secondly, for any cause which by the laws of this State, render a marriage null and void ab initio."

cause or reason on August 8, 1978. Her prayers for relief included a request for temporary and permanent alimony.

After a hearing on the merits on May 15, 1980, the chancellor (the Honorable John E. Raine, Jr.) rendered his oral opinion from the bench followed by a formal written decree dated May 20, 1980. On the uncontroverted facts he found that the "marriage was void ab initio, so that Mr. Roth is entitled to divorce." That portion of the decree is not contested, nor could it be. *See Townsend v. Morgan,* 192 Md. 168, 173 (1949), holding that "common law marriages are not valid in Maryland and, therefore, when a party who has a spouse living marries another, cohabitation under the second marriage after the death or divorce of the first spouse does not give validity to the second marriage."

On the issue of alimony, Judge Raine said in his oral opinion:

> "The question arises as to whether the wife is entitled to any alimony. In the Clayton case, referred to by Mr. Miller, alimony was allowed to a wife who had filed suit against the alleged husband, but there it was the husband who had committed the bigamy, and the wife was the innocent party. This is the reverse of that situation. Yet, I am inclined to think that this matter should be approached from the standpoint of a divorce on non-culpable grounds in which event a court may award alimony considering the two factors of the marital fault and the needs of the wife, *Flanagan v. Flanagan,* for example."

> \* \* \*

> "I'm going to rule, although it's conceded that this is no case law, that Mr. Roth has got to pay reasonable alimony to the woman that he married in Virginia because, in that respect, I think that they were both in pari delicto, at least he became aware of the pre-existing marriage to Hoffman within a very short period of time after the Virginia mar-

riage ceremony,[2] and having remained silent and inactive about it for some eighteen years, he cannot now excuse his own participation in the invalid marriage."

After finding that Patricia "does have some needs that she cannot meet in its entirety" and considering the financial circumstances of the parties, the judge decreed that she be awarded $50.00 per week as alimony. Robert was also ordered to pay her an additional $15 per week to amortize the accrued arrearages in alimony pendente lite previously ordered.

In *Clayton v. Clayton,* 231 Md. 74, 188 A.2d 550 (1963), the case referred to by Judge Raine in his oral opinion, the chancellor below had awarded alimony to a putative wife who, after proving that her putative husband was still married to another at the time of their marriage, obtained a divorce on the ground that the marriage was void ab initio. The Court of Appeals affirmed. The Court recognized the prevailing case law that *in the absence of statute* alimony is generally not allowed in any case where the marriage is declared null and void ab initio, but went on to say that "by statute in many states, support for the putative wife is allowed in all cases of divorce or annulment" and that, "In other states, the same result is reached, by construction of the divorce statute to permit an award of alimony, even where the ground of divorce is that the marriage is a nullity." After construing the Maryland divorce statutes, the Court said, "We take the same view." The ultimate reasoning and holding of the Court is contained in the following paragraph of the opinion, at 77-78:

"The key to the instant case, as we see it, is the legislative declaration that alimony is allowable

---

**2.** Earlier in his oral opinion, the chancellor found that "the relationship between the parties was such that Mr. Roth did know [at the time of the marriage] that she had not finalized her divorce from Hoffman. At least, any reasonable person would have known of that under all the circumstances."

whenever there is a decree for divorce.[3] We read 'alimony' not in the technical sense of the word, but as commensurate with 'support'. The inclusion of prevenient invalidity as a ground for divorce must be ascribed some meaning, and we think it shows a legislative intent to permit an award of alimony *in a proper case.* The writers and cases recognize that *the problem is one of statutory construction.* In the absence of statute, alimony is generally not allowed in any case where the marriage is declared to be null and void ab initio. See 17 Am. Jur. *Divorce and Separation,* § 562; Nelson, *Divorce and Annulment,* (2d ed.) § 31.56. The cases are collected in a note 54 A.L.R. 2d 1410. But by statute in many states, support for the putative wife is allowed in all cases of divorce or annulment. In other states, the same result is reached, by construction of the divorce statutes to permit an award of alimony, even where the ground of divorce is that the marriage is a nullity. See *Jones v. Jones,* 296 P. 2d 1010 (Wash.) and *Eggleston v. Eggleston,* 103 N. E. 2d 395 (Ohio). *We take the same view.* If other questions relating to voidable marriages and annulments are left unanswered, that is a matter for legislative consideration, as suggested by Professor Strahorn in the articles cited, *supra,* and by Judge Hammond in his concurring opinion in *Johnson v. Johnson* [202 Md. 547, 552, 558]." (Emphasis added).

Robert argues that because Patricia failed to establish that she was entitled to a divorce on the grounds alleged in her cross-bill, she is not entitled to alimony. It is true that the chancellor could not have granted Patricia a divorce on the grounds alleged by her in her cross-bill. It is also true, as contended by Robert, that there can be no grant of perma-

---

3. Former § 3 of Art. 16, in effect at the time of the *Clayton* decision and also applicable to the present case, provided: "In cases where a divorce is decreed, alimony may be awarded."

nent alimony unless the claimant "can show grounds sufficient to support a decree of divorce, either *a vinculo* or *a mensa.*" *Stein v. Stein,* 251 Md. 300, 302 (1968). It does not follow, however, that because Patricia failed to obtain a divorce on the grounds she alleged, the chancellor was precluded from considering awarding her alimony. This is so because the evidence in the case established that she, as well as Robert, had a statutory ground for divorce, *i.e.,* that their marriage was void ab initio. The fact that it was Patricia and not Robert, albeit with his knowledge and encouragement, who committed bigamy, would not have prevented Patricia from obtaining the divorce on the same ground alleged by Robert. *See Townsend v. Morgan, supra,* holding that, "the marriage status being on a different footing from contracts generally, a party may be relieved from a void marriage, although fully aware of its invalidity when contracted." *Id.* at 175.

It thus seems clear that under the Maryland statute either party may obtain a divorce where there has been a void marriage, without regard to the conduct, fault, condition or consent of the other party. In this respect, a divorce on void ab initio grounds is similar to a divorce granted on so-called "no fault" grounds (*e.g.,* three years separation), in that when a divorce is granted to a party on such grounds "it can hardly be contended that this grant was not so much a decree in favor of one as the other." *Flanagan v. Flanagan,* 270 Md. 335, 338 (1973); *Wallace v. Wallace,* 290 Md. 265, 281 (1981). We agree with Judge Raine that, in the sense that what would otherwise be considered "marital fault" does not bar either party to a void marriage from obtaining a divorce, a divorce obtained on void ab initio grounds may be analogized to one obtained on nonculpatory grounds, and what was said in *Flanagan* concerning alimony in such cases is fully applicable to the present case:

> "We have consistently construed this section [former § 3 of Art. 16, providing: 'In cases where a divorce is decreed, alimony may be awarded'] when applied in connection with divorces on nonculpatory grounds to permit an allowance of ali-

mony to the wife regardless of who originally initiated the action. *Hughes v. Hughes,* 216 Md. at 377; *Foote v. Foote,* 190 Md. 171, 57 A.2d 804 (1948). This is so because when a divorce *a vinculo* is given to one spouse on the grounds of a five year [now three year] separation of the parties, it can hardly be contended that this grant was not as much a decree in favor of one as the other. *Therefore, in any suit for divorce on nonculpatory grounds, dissolution of the marriage permits the court to consider the granting of alimony so long as that question is put in issue by either the original bill or a cross-bill, or by requesting such affirmative relief in an answer. See Munich Co. v. United Surety Co.,* 113 Md. 200, 77 A. 579 (1910); *Young v. Twigg,* 27 Md. 620 (1867). Once the issue is raised the opposing party may respond in any appropriate manner to this request." (Emphasis added) *Id.* 338-339.

\* \* \*

"Throughout the years, our cases have said that when a wife's fault precludes her from procuring a divorce she is prevented from obtaining alimony. *Stein v. Stein,* 251 Md. 300, 302, 247 A.2d 266 (1968); *Keys v. Keys,* 251 Md. 247, 247 A.2d 282 (1968) and the cases cited in each. This result was axiomatic as a spouse's right to obtain a divorce, either *a vinculo* or *a mensa,* is a requirement for the obtention of alimony — ergo, no right to divorce, no right to alimony. But those cases are inapplicable here because 'no fault divorce' changes the predicament in which she would otherwise find herself, as either party regardless of fault can secure a divorce if he or she can meet the requirements of one of the authorized nonculpatory grounds. On the other hand, the previous opinions of this Court mentioned earlier, which establish the standards for fixing alimony in suits based on culpability, are applicable and make facile our determination that fault is one

of the several factors to be considered in properly awarding alimony in a nonculpatory divorce as well. This is logically so and there is nothing in the public policy of Maryland as expressed in the statute to the contrary." *Id.* 339-340.

In the present case, we think Patricia's cross-bill seeking alimony and her prayer for general relief properly put in issue the question of alimony. Furthermore, as we have already stated, the evidence established that Patricia had the same void ab initio ground for divorce as did Robert, and alimony is, as established by the *Clayton* decision, allowable on that ground in a proper case. We, therefore, conclude that the chancellor was fully authorized to consider awarding Patricia alimony. Under all the circumstances revealed by the record, we further conclude that this was a "proper case" for the award of alimony, such that the chancellor did not abuse his discretion in making an award.

We think the result we reach in this case is buttressed by the recent Maryland Court of Appeals case of *Wallace v. Wallace, supra,* as well as by a number of decisions in other jurisdictions that have considered the issue of awarding alimony to a bigamous wife whose marriage has been declared invalid at suit of the putative husband.

In *Wallace,* the estranged wife brought suit in the Circuit Court for Montgomery County seeking a divorce *a mensa et thoro* on the grounds of her husband's desertion, custody of the couple's minor children, child support and alimony. While the suit was pending, the husband established residence in Virginia and obtained a valid divorce *a vinculo matrimonii* in an appropriate Virginia court based on that state's statutory non-culpable ground that the parties had lived separate and apart, without interruption or cohabitation, for a period exceeding one year. The wife then filed an amended bill of complaint, abandoning her prior claim for a Maryland divorce. By the amended bill she did seek, however, permanent alimony. The basis of her alimony claim, alleged in her amended bill of complaint, was that she "could also have instituted" suit for divorce in Virginia "and would

have been entitled to a divorce on the same identical ground, to wit, the no fault ground of having lived separate and apart, without interruption and without any cohabitation for a period in excess of one year." The husband contended that his former wife was not entitled to alimony because, in his view, she could not demonstrate the existence of grounds for divorce against him. The Court of Appeals affirmed an alimony award to Mrs. Wallace granted by the chancellor, thus affirming this Court's decision in *Wallace v. Wallace,* 46 Md. App. 213 (1980).

Speaking through Judge Digges, the Court of Appeals held that "there are two theories upon which Mrs. Wallace may rely to establish the necessary predicates, grounds for a divorce either a *mensa* or a *vinculo,* for the obtention by her of alimony from her former husband." *Id.,* p. 274. Noting that Mrs. Wallace did not challenge the validity of her husband's Virginia divorce, the Court stated:

> ". . . Curiously as a result of this, respondent is placed in the awkward position of having to establish grounds for a divorce notwithstanding the fact that she has already been validly divorced from her husband on a non-culpatory ground, and even though, because of that adjudication, she is not in actuality able to obtain a divorce from the Maryland court. And it is the hypothetical nature of the query here which requires our continuous use of the conditional mood and past perfect tense when referring to the evidentiary burden which Mrs. Wallace shouldered in this case. *That she cannot in fact obtain a divorce, however, does not, by itself, defeat her claim for alimony, for while this State's law requires that she show grounds for a divorce, it does not compel her either to actually obtain one in this State or to prove that she in fact could have obtained one if she so desired."* (Emphasis added). *Id.,* p. 274.

The first basis upon which the alimony award was upheld was that the evidence showed that Mrs. Wallace "did have

grounds for a divorce *a mensa et thoro* based on a voluntary separation under § 25 of Article 16 . . . Thus, inasmuch as a divorce *a mensa* will support an award of alimony, Mrs. Wallace has shown a ground which *would have* entitled her, absent the Virginia decree, to a divorce. . . ." (Emphasis added). *Id.*, p. 277. The Court then rejected the argument that Mrs. Wallace's pre-divorce adultery is a recriminatory offense that bars divorce on this non-culpable ground. The Court held, however, that the adultery, as marital misconduct, was an important consideration in determining an alimony award. *Id.*, p. 281.

A significant effect of this holding in *Wallace* upon the case before us is that in determining whether Mrs. Wallace had established the necessary predicate for an alimony award, *i.e.*, that she show the existence of grounds for a divorce either *a mensa* or *a vinculo*, the Court did not restrict her to relying upon only the grounds alleged in either her original bill of complaint (adultery and abandonment) or her amended bill of complaint (one year separation under Virginia law). The issue of alimony having been raised, the Court looked to the evidence as a whole to determine the existence of grounds that *would have* entitled her to a divorce absent the Virginia decree. Thus, we find support for our holding in the present case that Patricia Roth, having raised the issue of alimony in her cross-bill of complaint, would have been entitled to a divorce on a void ab initio ground even though she did not allege that ground in the cross-bill. Consequently, the public policy engendered by the requirement of proof of grounds for divorce to support an award of alimony has been satisfied.[4]

---

4. The second theory upon which the Court found that an award of alimony could be predicated was "that independent of grounds for a divorce under the Maryland statutes, the Virginia divorce decree may be relied on by [Mrs. Wallace] to support an award of alimony from a Maryland court . . . . There exists no reason in our view why Mrs. Wallace cannot rely on the out-of-state divorce decree in the proceeding initiated by her in Maryland to obtain permanent alimony. *Commencing from a generality, we observe that an award of alimony, though authorized by statute and stemming from the common-law duty of support, is founded upon notions of equity and considerations of public policy.* See Altman v. Altman, 282 Md. 483, 492-94, 386 A.2d 766, 771-72 (1978); Flanagan v. Flanagan, *supra* at 341-42, 311 A.2d at 411." *Id.* at 283-284.

Many of the cases from other jurisdictions that have
awarded alimony to a bigamous spouse after her marriage to
her putative husband has been declared void, either by
decree of divorce or an annulment decree, are collected in 54
A.L.R.2d 1410, 1413-1418, the same note cited by the Court
of Appeals in *Clayton v. Clayton, supra,* and in a later note
81 A.L.R.3rd 281, 291-302. Our reading of these cases
convinces us that where, as in Maryland, the applicable stat-
utes are interpreted to permit the court, in the exercise of its
discretion, to award alimony where a divorce is granted on
void ab initio grounds, this discretionary power is not
limited to cases where the alimony claimant is without fault.
Typical of these cases is *Johnson v. Johnson,* 295 N.Y. 477,
68 N.E.2d 499 (1946), where under a New York statute
permitting the court to provide "support of the wife by the
husband as justice requires" when an action is brought to
declare the nullity of a void marriage, the Court of Appeals
of New York rejected a contention that the statute was
intended to apply only against a bigamist husband. In that
case the wife originated a suit for separation and the hus-
band counterclaimed for an annulment on the ground that
the wife's prior marriage to another was still in existence. A
lower court dismissed the wife's complaint for separation,
granted the husband's request for annulment, but,
nevertheless, awarded the wife alimony. In affirming that
decision, the appellate court said:

> "True enough, the prime evil which the commis-
> sion sought to remedy was the unhappy plight of
> the innocent wife married to a bigamist husband;
> under the law as it then existed, she could termi-
> nate this undesirable and illegal relationship only
> at the cost of relinquishing all claim to support,
> while the offending husband could, at his pleasure,
> avail himself of the invalidity of a marriage — void
> because of his own misdeed — and slough off the
> financial responsibilities which he had voluntarily
> assumed. Nevertheless, the commission obviously
> did not desire to restrict the application of the stat-
> ute to that situation alone, for the very language

employed — 'When an action is brought to annul a marriage or to declare the nullity of a void marriage' — demonstrates unequivocally an intent to embrace all the situations in which the Domestic Relations Law, §§ 5, 6, 7, declares a marriage to be void or voidable.

\* \* \*

Moreover, the statute is not, by its terms, limited to cases where the wife is the innocent party . . ." 68 N.E. at 500.

In another New York case, *Whittleton v. Whittleton,* 3 Misc.2d 542, 152 N.Y.S.2d 117 (1956), the facts of which appear quite similar to the case at bar, alimony was awarded to a putative wife after her putative husband had successfully obtained an annulment of the marriage on the ground that his wife had a husband living at the time the parties went through the marriage ceremony. In holding that this was a "proper case wherein the Court may providently exercise its discretion" in favor of granting alimony, the Court said:

"... While the defendant was guilty of misconduct in bringing about this third marriage, the plaintiff is not without fault. He knew that defendant had not validly dissolved her marriage with Crooks. He was at least put upon inquiry to determine for himself if Crooks was still alive at the time he married the defendant. The plaintiff has lived with and cohabited with the defendant for a number of years as husband and wife. He should not be permitted to entirely escape the consequences of his improvident conduct." 152 N.Y.S. 2d at 123-124.

> *Judgment affirmed; costs to be paid*
> *by appellant.*

*Gilbert, C.J., dissenting:*

I dissent because I strongly believe the result reached by the majority is an injustice to the appellant.

When the parties entered into the "marriage" in this case, the appellee was fully aware that she lacked the legal capacity to do so. She knew that her prior marriage was not dissolved, yet she plunged ahead, ignoring the consequences of her bigamous act. To now award her alimony as a reward for breaking the law defies common sense.

The trial judge found that the parties were *in pari delicto.* Ordinarily, when the litigants are equally guilty, the law leaves them where it finds them. That, however, is not what was done in this case. Here, after determining that the appellant and appellee were equally guilty, the court, by its award of alimony, implicitly made the appellee "more equal" and "less guilty" and the appellant "more guilty" and "less equal."

The majority rely upon *Clayton v. Clayton,* 231 Md. 74 (1963), but I think that case is factually inapposite. In *Clayton,* the appellee woman received alimony because the man who had married her committed bigamy in that he was already married. In short, there, the "wife" was the innocent party, while in the instant case, it is the "husband" who is the "innocent party." At least, he is innocent in that he did not commit bigamy, the appellee did.

Although Md. Ann. Code art. 16, § 1, does declare that a court may award alimony in any case where a divorce may be granted, and Md. Ann. Code art. 16, § 24 permits divorces in those situations where the marriage is void *ab initio,* I cannot believe that the Legislature's intent was to reward the wrongdoer by giving her a monetary award in the form of alimony for her wrongful and illegal conduct.

The net effect of the affirmance of the award of "alimony" in the instant case is to change, by judicial alchemy, "alimony" into "palimony."

I would reverse.